# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS V.,[1]<br>   **Plaintiff,**<br> v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>   **Defendant.** | NO. SACV 17-1787-KS<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Marcus V. ("Plaintiff") filed a Complaint on October 13, 2017, seeking review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). On November 24, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 7, 10-11.) On August 7, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 18.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 33.) The

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 33-34.) The Court has taken the matter under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On October 1, 2014, Plaintiff, who was born on November 3, 1970, filed an application for a period of disability and DIB.[2] (*See* Administrative Record ("AR") 16, 149; Joint Stip. at 3.) Plaintiff alleged disability commencing November 28, 2013 due to: a back injury at L4 and L5; hip dysplasia; deteriorating right hip; and arthritis in the back. (AR 149, 164.) Plaintiff previously worked as a data communications technician (DOT 823.261-030). (AR 22, 71, 165.) After the Commissioner denied Plaintiff's applications initially (AR 86) and on reconsideration (AR 96), Plaintiff requested a hearing (AR 113-14). Administrative Law Judge Sharilyn Hopson ("ALJ") held a hearing on May 18, 2016. (AR 37.) Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") Susan Allison. (AR 37.) On June 30, 2016, the ALJ issued an unfavorable decision, denying Plaintiff's application. (AR 16-24.) Plaintiff submitted additional medical evidence to the Appeals Council (AR 2), which denied Plaintiff's request for review on September 15, 2017. (AR 1-4.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (AR 18.) The ALJ further found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 28, 2013. (AR 18.) The ALJ determined that Plaintiff had the following severe

---

[2] Plaintiff was 43 years old on the alleged onset date and thus met the agency's definition of a younger individual. *See* 20 C.F.R. § 404.1563(c).

2

impairments: "narrowing of the bilateral superior hip joint space; degenerative changes of the bilateral hip; large paracentral disc protrusion/extrusion; lumbar radiculopathy; and congenital hip dysplasia." (AR 18.) In reaching that determination, the ALJ found that Plaintiff's colitis was a nonsevere impairment and Plaintiff did not have a medically determinable impairment of depression. (AR 18.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 19.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "sedentary work" as follows:

> [Plaintiff] can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; he can stand and/or walk for 1 hour of an 8-hour workday with regular breaks; he can sit for 7 hours out of an 8-hour workday with regular breaks; he should have the ability to stand and stretch estimated to take 1 to 3 minutes per hour; he should use a cane as necessary; he can occasionally climb stairs; he cannot climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; he should avoid concentrated exposure to extreme cold, unprotected heights, and moving and dangerous machinery; and he must be in close proximity to a restroom.

(AR 19.)

The ALJ found that Plaintiff was unable to perform his past relevant work as a data communications technician (DOT 823.261-030). (AR 22.) However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of order clerk in food and beverage (DOT 209.567-014) and final assembler (DOT 713.687-018). (AR 22-23.) Accordingly, the ALJ

determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (AR 23.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Further, when a claimant submits evidence for the first time to the Appeals Council, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**ISSUES IN DISPUTE**

The parties have placed in dispute the following four issues: (1) whether the ALJ adequately assessed the credibility of Plaintiff's statements about his pain and limitations; (2) whether the ALJ properly considered the opinion of Dr. David Kim, Plaintiff's treating physician; (3) whether the ALJ's finding that Plaintiff can sit for seven out of eight hours is supported by the medical evidence; and (4) whether the new evidence provided to the Appeals Council warrants remand. (Joint Stip. at 1.)

**DISCUSSION**

**I. Plaintiff's Credibility**

**A. Plaintiff's Statements**

On November 1, 2014, Plaintiff completed an "Exertion Questionnaire." (AR 186-88.) Plaintiff stated that the pain in his hips makes it very difficult to walk and his bad back makes it almost impossible to lift anything. (AR 186.) In an average day, Plaintiff stated

that his sole activity was driving his daughter to and from school. (AR 186.) In response to a question about how far Plaintiff could walk, Plaintiff wrote that he "tried to walk at least 3x a week around the block, which can take anywhere from a ½ [hour] to 45 min." (AR 186.) Plaintiff added that after the walk he would lie flat on his back to help with the pain in his hips. (AR 186.) In response to a question about whether Plaintiff climbed stairs, Plaintiff checked "yes" and explained that he has "2 flights of stairs at home which [he] avoid[s] as often as possible." (AR 187.) Plaintiff wrote that "most days" he lifted nothing more than light groceries. (AR 187.) He stated that he could carry items under 20 pounds from the car to the house, which was a distance of approximately 40 feet. (AR 187.) Plaintiff indicated that he spent 20-30 minutes a day cleaning the house by washing dishes and picking up clothes and dishes. (AR 187.) Plaintiff stated that he is able to drive for about an hour before the sitting "kills [his] back." (AR 187.) Plaintiff stated that he does "very light yard work, like watering plants and pruning dead leaves." (AR 187.) Plaintiff stated that he has difficulty finishing his housework and other chores because, after about 30 minutes, he needs to lay down and stretch. (AR 188.) Plaintiff stated that he rests on his back for 30 minutes to an hour approximately twice a day. (AR 188.) Plaintiff stated that he takes Norco and morphine three times a day. (AR 188.) Plaintiff indicated that he used a cane for walking and sometimes a motor chair. (AR 188.)

A year and a half later, at the May 2016 hearing, Plaintiff testified that he stopped working in Information Technology ("IT") because his physical pain had become unbearable and he could not complete his work tasks in a timely fashion. (*See* AR 41.) Plaintiff testified that his house has stairs leading up to his daughter's room and he does not go up them. (AR 42.) Plaintiff testified that he drives his daughter to school twice a week. (AR 43.) The drive was about 15 minutes long. (AR 44.) Plaintiff testified that he could not bend over or squat. (AR 42, 46.) Plaintiff testified that he has no problems, reaching up, to the side, or forward. (AR 46.) He testified that he has no problems with his arms. (AR 47.) On a scale of 1-10, with 10 being the worst, Plaintiff stated that his hip pain was, on average,

a six most days but occasionally spiked to a ten. (AR 48.) Plaintiff stated that his pain medications brought his pain down from a six to a five. (AR 48-49.) Plaintiff also testified that about once a week he experiences neck pain resulting from a fusion surgery in his neck. (AR 50.) Plaintiff also testified that he had "recently" been prescribed a brace for his knee. (AR 51.) Plaintiff testified that he had been using a cane for two years prior to the hearing. (AR 51-52.) Plaintiff testified that he believed he could sit for 20 to 30 minutes before having to change positions, although on some days he was unable to sit for any length of time. (AR 52.) Plaintiff testified that he has two "bad days a week" and described a bad day as one in which he is effectively bedridden. (AR 52-53.) Plaintiff testified that he could stand in one position with his cane for about three minutes. (AR 53.) Plaintiff testified that he believed he could walk for about ten minutes before having to stop. (AR 53-54.) Plaintiff testified that during the day he spends about two hours lying down in the morning and "at least a couple more hours" lying down in the afternoon. (AR 54-55.) Plaintiff testified that he had seen several orthopedic surgeons about the pain in his hips and, although he is a candidate for a hip replacement, he had been advised to wait because his dysplasia could cause the hip replacement hardware to degrade faster. (*See* AR 55-56.) Plaintiff testified that he is able to load the dishwasher sometimes. (AR 59.) Plaintiff testified that he would be unable to do a grocery shopping trip on his own. (AR 60.) He testified that the most he can lift is a gallon of milk, and he cannot lift a gallon of milk repetitively during a day. (AR 61.) Plaintiff testified that his activities include reading (AR 62), watching TV (AR 62), and going to church twice a week (AR 61) – although he has to "squirm[] around" and sometimes get up and stand against a wall in order to make it through a service (AR 64-65).

**B. Applicable Law**

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir.

2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

With respect to the first step, a plaintiff "need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused *some* degree of the symptom." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)) (emphasis added). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id.* (quoting *Smolen*, 80 F.3d at 1282); *see also Reddick v. Chater*, 157 F.3d 715, 722 (1998) ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

With respect to the second step, in weighing a plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

8

However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

**C. ALJ's Decision**

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not consistent with the medical evidence and other evidence in the record. (AR 20.) Specifically, the ALJ stated that Plaintiff had received "routine, conservative, and non-emergency treatment since the alleged onset date." (AR 20.) The ALJ noted that surgery had not been recommended for Plaintiff because his hip socket was too shallow and would likely result in the metallic part popping out of the socket after surgery. (AR 20.) The ALJ also pointed out that Plaintiff had stated that his prescription medications provided "fair pain control" (AR 20) (citing Exs. 2F at 3; 8F at 78, 99-100), and, in March 2015, Plaintiff reported being able to perform all activities of daily living, including driving, a report that the ALJ found difficult to reconcile with Plaintiff's statements about the severity and limiting effects of his impairments (AR 21) (citing Ex. 6F at 48). Finally, the ALJ described Plaintiff's testimony as internally inconsistent because Plaintiff alleged that his pain and medications decreased his concentration, which "essentially rendered him disabled," but also stated that he read, watched television, performed light household chores and yard work, and drove his daughter to school. (AR 22.)

\\
\\
\\
\\
\\

### D. Analysis

#### 1. Conservative Treatment

The ALJ's first reason for discrediting Plaintiff's testimony is that Plaintiff received conservative treatment. (AR 20.) Evidence that a severe impairment is effectively managed with conservative treatment is sufficient to discount a claimant's testimony regarding the severity of that impairment. *See Tommasetti*, 533 F.3d at 1039-40; *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). However, substantial evidence in the record does not support the ALJ's characterization of Plaintiff's treatment as conservative nor does it support the view that the conservative treatment Plaintiff did receive was effective.

Citing page 3 of Exhibit 2F, the ALJ stated that Plaintiff had stated that his prescription medications provided "fair pain control." (AR 20.) The ALJ's citation references Plaintiff's January 6, 2015 appointment with Dr. David Bum-Soo Kim, at which time Plaintiff's pain medications included two narcotics with a high risk of addiction, morphine and hydrocodone-acetaminophen (also known as Norco), and nortriptyline (Pamelor), a nerve pain medication. (AR 295, 304, 324-25.) At the January 6, 2015 appointment, Plaintiff told Dr. Kim that this combination of medications resulted in "fair control of pain," but Dr. Kim wrote that Plaintiff appeared to be distressed, exhibited musculoskeletal tenderness, and "laxity with pain on passive motion" during his physical exam. (AR 295.) Within a week of the exam, Dr. Kim added 600 mg of Ibuprofen to Plaintiff's cocktail of pain medications. (AR 303 (medication started 1/13/15).)

Plaintiff's January 6, 2015 report to Dr. Kim that his pain was "fairly controlled" was an outlier in the medical record. A month earlier, Plaintiff had called Dr. Kim's office to report that he had been taking more morphine than prescribed and wanted an appointment to discuss his "worsening pain." (AR 297-98.) An x-ray from around the same time showed

that the degenerative changes in Plaintiff's hip joints had "progressed from prior study." (AR 300 (October 27, 2014 x-ray of hips, pelvis).) At Plaintiff's October 27, 2014 appointment with Dr. Kim, Plaintiff had stated that his pain was "not controlled," and Dr. Kim increased Plaintiff's dosage of morphine to 60mg three times a day. (AR 296.) Dr. Kim wrote that this was the "maximum dosage" of morphine. (AR 296.) Indeed, the ALJ noted that Plaintiff's dosage of morphine had been increased to the maximum amount in October 2014. (AR 21.)

Perhaps even more significantly, just one month after Plaintiff's January 2015 appointment with Dr. Kim, Plaintiff reported to Dr. Kim that his pain medications were "not working." (AR 3560 (February 23, 2015 appointment).) That same week Plaintiff had a consultation with orthopedic surgeon Dr. Kamil Yousef Antonios. (AR 360 (February 25, 2015 appointment).) Plaintiff reported that he "want[ed] to have a total hip replacement after having tried conservative therapy." (AR 360.) Dr. Antonios noted that Plaintiff had received epidural injections in the past. (AR 360.) Dr. Antonios discussed Plaintiff's condition and options and told Plaintiff to "think about surgical treatment" and "read about total hip replacement." (AR 361.) In a subsequent treatment note, Dr. Kim wrote that Dr. Antonios had advised that Plaintiff try taking Meloxicam (an anti-inflammatory) and lose 30 pounds before undergoing a total hip replacement. (AR 373.)

By March 15, 2015, Plaintiff's daily pain medications included: Norco three times a day as needed for pain; morphine three times a day; Ibuprofen with food; nortriptyline one to two capsules at bedtime; and Meloxicam once or twice daily as needed. (AR 367.) In addition, Plaintiff tried epidural steroid injections. (AR 424 (June 18, 2015 plaintiff reported some success with a previous epidural steroid injection)); *see also Hydat Yang v. Colvin*, No. CV 14-2138-PLA, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) ("This Court has previously found that spinal epidural injections are *not* 'conservative' treatment." (emphasis added)) (citing, *inter alia*, *Harvey v. Colvin*, No. CV 13–5376–PLA, 2014 WL 3845088, at

11

*9 (C.D. Cal. Aug.5, 2014)). Plaintiff was encouraged to schedule a second steroid injection. (AR 425 (June 18, 2015 appointment).) On November 9, 2015, Plaintiff received a second epidural steroid injection. (AR 447.) The pain management specialist administering the injection, Dr. Peter Chun-Ming Jong advised Plaintiff that "the lumbar epidural steroid injection [would] not help with his hip osteoarthritis symptoms" and "any relief from the lumbar epidural steroid injection [was] likely to be temporary." (AR 447.)

Finally, on February 11, 2016, a few months before Plaintiff's administrative hearing, Plaintiff informed Dr. Kim that he desired to move forward with a hip replacement procedure. (AR 453.) On May 11, 2017, Plaintiff received a left total hip replacement. (AR 710.) The orthopedic surgeon who performed the operation, Dr. Dhiren Shashikant Sheth, stated that surgery was indicated "in view of the failure of nonoperative treatment and advanced nature of the disease." (AR 720.) Dr. Sheth also wrote that plaintiff had "maximized conservative treatment." (AR 712.)

In light of the foregoing, the ALJ's determination that Plaintiff was less than fully credible because his symptoms had been effectively controlled with "routine, conservative, and non-emergency treatment since the alleged onset date" (AR 20) was not supported by substantial evidence in the record. To the contrary, Plaintiff spent years taking a cocktail of highly addictive narcotics, including the maximum daily dosage of morphine, as well as anti-inflammatories and nerve pain medications, but only intermittently described his symptoms as fairly controlled. He also tried epidural steroid injections, although the specialist pointed out that these were unlikely to provide Plaintiff with long term relief. Finally, although the doctors encouraged Plaintiff to delay surgery, in May 2017, after having "maximized" his conservative treatment options to little avail, Plaintiff received a left total hip replacement. In light of this evidence, the ALJ's assertion that Plaintiff was not fully credible because his condition was adequately managed with conservative treatment did not did not justify her adverse credibility determination.

### *2. Activities of Daily Living*

The ALJ's second reason for finding Plaintiff less than fully credible was the ALJ's determination that: (1) in March 2015, Plaintiff reported to a medical provider that he was able to perform all activities of daily living, including driving, (AR 21) (citing Ex. 6F at 48); and (2) Plaintiff admitted to retaining the ability to read, watch television, perform light household chores, do yard work, and drive his daughter at school, abilities that were inconsistent with Plaintiff's testimony that his pain and medications decreased his concentration (AR 22). An ALJ may rely on a plaintiff's daily activities to support an adverse credibility determination only when those activities either: "contradict [the plaintiff's] other testimony"; or "meet the threshold for transferable work skills" – that is, where the plaintiff "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639; *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996).

Again, the ALJ's characterization of the record is not supported by substantial evidence. The ALJ states that, in March 2015, Plaintiff reporting being able to perform all activities of daily living. (AR 21) (citing Ex. 6F at 48). However, the portion of the record that the ALJ cites is a nurse's note dated March 16, 2015. (AR 402.) At that time, Plaintiff had been admitted to the hospital "for colitis, sepsis, r/o Cdiff," his "primary problem" was "abdominal pain/diarrhea," and the nurse wrote that Plaintiff "drives, is indep with all ADLs" without providing any additional detail. (AR 402.) Accordingly, it is not at all clear what activities the nurse meant by "ADLs" and whether her notation does, in fact, conflict with Plaintiff's statements and testimony about the limitations imposed by his musculoskeletal problems as opposed to his colitis. Certainly, the nurse's vague notation does not, without more, constitute substantial evidence for the ALJ's adverse credibility determination.

The ALJ also described Plaintiff's testimony as internally inconsistent because, according to the ALJ, Plaintiff alleged that his pain and medications decreased his concentration, which "essentially rendered him disabled," yet Plaintiff also stated that he read, watched television, performed light household chores and yard work, and drove his daughter to school. (AR 22.) Again, the ALJ mischaracterizes the record.

Plaintiff did not mention any deficits in concentration on his exertion questionnaire. (*See generally* AR 186-88.) Accordingly, his only statements about concentration occurred at the hearing, during the following interaction:

**[ALJ]:** . . . . As far as you're concerned, do they [your medications] have any bad side effects on you?  In other words, do they affect you in a negative way?

**[Plaintiff]:** I –

**[ALJ]:** The –

**[Plaintiff]:** I get a little dingy.  I mean the pills I take, I get a little dingy.

**[ALJ]:** Okay.  Do you think they affect your concentration level at all?

**[Plaintiff]:** I guess they probably do.  I mean I would have to say –

**[ALJ]:** Okay.

**[Plaintiff]:** -- yeah.  To some degree.

**[ALJ]:** Okay.  Well is it – do you feel it's the medicine or the pain that affects your concentration?

\\
\\
\\
\\

| | | |
|---|---|---|
| 1 | **[Plaintiff]:** | I think it's a combination of both.  The pain – |
| 2 | **[ALJ]:** | Okay. |
| 3 | **[Plaintiff]:** | -- when you're trying to – when you're dealing with the |
| 4 | | pain all day long like this, I mean it's just . . . It kind of makes you crazy. |

(AR 57-58.)

Given that this exchange is the only evidence in the record supporting the ALJ's finding that Plaintiff claimed his deficits in concentration "essentially rendered him disabled," the ALJ's characterization of Plaintiff's testimony is not supported by the record. Plaintiff did not assert, as the ALJ claims, that his decreased concentration rendered him disabled. Instead, at most, Plaintiff stated that his medications "probably" affected his concentration "to some degree" and the unrelenting nature of his pain made him feel "crazy." (AR 58.) Further, Plaintiff had consistently alleged that his *physical* symptoms left him unable to work a full-time job because he would be unable to perform many of the physical tasks involved and/or perform them at the frequency or speed required. Accordingly, Plaintiff's testimony regarding his ability to concentrate is not at odds with his professed ability to read, watch TV, perform light household chores and yard work, and drive his daughter 15 minutes to a school. (AR 44.) For that reason, the ALJ's second grounds for finding Plaintiff less than fully credible is not supported by substantial evidence in the record and, as such, does not support the ALJ's adverse credibility determination.

## II. ALJ's Evaluation of Dr. Kim's Opinion

### A. Dr. Kim's Opinion

On October 2, 2015, Dr. Kim, Plaintiff's treating physician, completed a Medical Evaluation form. (AR 344-46.) Dr. Kim stated that Plaintiff suffered severe pain and gait

abnormalities and his symptoms would likely increase if he was placed in a competitive work environment. (AR 344.) Dr. Kim stated that Plaintiff would be unable to work at least 6-hours of an 8-hour workday regardless of whether the work was limited to either sitting or standing or involved alternating between the two. (AR 345.) He stated that Plaintiff needed to rest for 7-8 hours in an 8-hour workday. (AR 345.) He stated that Plaintiff "should do no heavy lifting" and limited Plaintiff to lifting less than five pounds frequently. (AR 345.) Dr. Kim stated that Plaintiff was unable to use his hands/arms frequently for grasping, pulling, pushing, or fine manipulation work. (AR 345.) Dr. Kim stated that Plaintiff could not use his legs to push or pull frequently. (AR 346.) Dr. Kim stated that Plaintiff was not able to perform bending, squatting, kneeling, or climbing on a frequent, sustained daily basis. (AR 346.) Dr. Kim stated that Plaintiff should avoid exposure at work to unprotected heights, moving machinery, and driving automotive equipment. (AR 346.)

### B. Applicable Law

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them"). Generally, the opinion of a treating source is entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. §§ 404.1527(c)(2) (governing claims filed before March 27, 2017), 404.1520c(c) (governing claims filed on or after March 27, 2017). Accordingly, to reject an uncontradicted opinion of a treating or

examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Alternatively, "[i]f a treating or examining doctor's opinion *is* contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (emphasis added). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

An ALJ may properly reject a treating physician's conclusions that do not "mesh" with the treating physician's objective data or history. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). However, the ALJ may not arbitrarily substitute her own judgment for competent medical opinion, make her own independent medical findings, or assess an RFC that is not supported by the medical evidence. *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006); *see also Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008) ("Neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion, or indeed for any competent medical opinion.") (internal quotation marks and citations omitted); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; he is "simply not qualified to interpret raw medical data in functional terms").

### C. ALJ's Decision

The ALJ stated that she found "some aspects of Dr. Kim's assessment entitled to some weight." (AR 21.) In particular, she wrote that "the limitations to standing, exposure to

unprotected heights, and exposure to moving machinery are supported by the objective evidence: decreased range of motion of the left hip and lumbar spine, antalgic gait with cane, and decreased sensation over the right lower extremity." (AR 21.) However, the ALJ found that "the rest of the limitations" – *i.e.*, Dr. Kim's determination that Plaintiff is unable to work six hours of an eight-hour workday, needs to rest for seven to eight hours in an eight-hour workday, is unable to lift five pounds frequently, is unable to use his hands to grasp, pull, push, or perform fine manipulation frequently, and is unable to push or pull with legs frequently – "are not supported by the objective evidence and [Plaintiff's] self-reported ability to drive short distance, load the laundry machine, wash dishes, lift light grocery bags, and carry up to 20 pounds." (AR 21) (citing Exs. 4E at 2, 6F at 48, and Hearing). Accordingly, the ALJ declined to adopt the rest of Dr. Kim's assessment.

The ALJ also noted that the State agency medical consultants who reviewed Plaintiff's medical records opined that Plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk four hours in an eight-hour workday; and, *inter alia*, sit six hours in an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 21; *see also* AR 82-83 (November 10, 2014 opinion of H. Han, M.D.), 91-93 (February 11, 2015 opinion of J. Clift, M.D.).) The ALJ stated that she "cannot give much weight to their determination that [Plaintiff] can stand and/or walk for four hours in an eight-hour workday or lift and carry 20 pounds occasionally and 10 pounds frequently." (AR 21.) Instead, she stated that she "finds it more appropriate to conclude [Plaintiff] can stand and walk 1 hour in an 8-hour workday, sit 6 hours in an 8-hour workday, stand and stretch for 1 to 3 minutes every hour, ambulate with a cane when necessary, and avoid climbing ladders, ropes, or scaffolds." (AR 21-22.)

There is no opinion from an examining physician.

\\
\\

### D. Analysis

Rather than articulating a "substantive basis" for rejecting portions of Dr. Kim's medical opinion in favor of the medical opinions of the reviewing physicians, or vice versa, the ALJ arbitrarily substituted her own judgment for the medical opinions of record and made her own independent medical findings about the extent of Plaintiff's abilities. In doing so, the ALJ erred. *See Banks*, 434 F. Supp. 2d at 805; *see also Burgess*, 537 F.3d at 131 ("Neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion, or indeed for any competent medical opinion.") (internal quotation marks and citations omitted). The ALJ is not qualified to interpret the raw medical data in functional terms. *See Nguyen*, 172 F.3d at 35 (as a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; he is "simply not qualified to interpret raw medical data in functional terms"). Accordingly, this matter must be remanded for proper consideration of the medical evidence and, if appropriate, referral to an examining physician for additional information about the extent of Plaintiff's abilities and limitations.

### III. Remand is Warranted

Having found that the ALJ failed to articulate clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff less than fully credible and also erred in her evaluation of the medical evidence, the Court exercises its discretion to remand on these grounds without reaching the merits of the remaining issues in dispute. In reaching this conclusion, the Court notes that the ALJ's errors were not inconsequential to the ultimate nondisability determination, and the Court cannot reasonably discern the ALJ's path despite her errors, as would be required for the Court to find the errors harmless. *See Brown-Hunter v. Colvin*, 806 F.3d at 492. However, the Court also cannot say that further administrative proceedings would serve no useful purpose and, if the improperly discredited

evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1020. Accordingly, this case is not the "rare exception" in which the credit as true rule should be applied and the matter remanded for the calculation and award of benefits. *See Leon v. Berryhill*, 874 F.3d 1130, 1133 (9th Cir. 2017). Therefore, the Court remands for further consideration and, if appropriate, development of the record.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATE: December 20, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE